PHILIP D. STERN & ASSOCIATES, LLC
ATTORNEYS AT LAW
697 Valley Street, Suite 2d
Maplewood, NJ 07040
(973) 379-7500
Attorneys for Plaintiff, Micaela P. Bennett

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICAELA P. BENNETT,<br>Plaintiff,<br><br>vs.<br><br>AVRAM E. FRISCH,<br>Defendant. | **COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Micaela P. Bennett ("BENNETT"), by way of Complaint against Defendant, Avram E. Frisch ("FRISCH"), says:

### I.   NATURE OF THE ACTION

1.   This action stems from the FRISCH's violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. when attempting to evict BENNETT, her husband and son from residential premises.

### II.   PARTIES

2.   BENNETT is a natural person.

3.   At all times relevant to the factual allegations of this Complaint, BENNETT was a citizen of the State of New Jersey, residing in Essex County, New Jersey.

4.   At all times relevant to the factual allegations of this Complaint, FRISCH was a natural person engaged in the private practice of law in the State of New Jersey with his principal office located at 4 Forest Avenue, Suite 200, Paramus, Bergen County, New Jersey. On information and belief, FRISCH conducts his practice of law under the name of Law Offices of Avram E. Frisch, LLC.

### III.   JURISDICTION AND VENUE

**5.**   Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

**6.**   Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to BENNETT's claims occurred within this federal judicial district, and because FRISCH regularly transacts business within this federal judicial district and, therefore, resides in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV.   LEGAL BASIS FOR FAIR DEBT COLLECTION PRACTICES ACT CLAIMS

**7.**   The FDCPA's elegant duality simultaneously advances both consumer and business interests by protecting vulnerable consumers while promoting marketplace competition. 15 U.S.C. § 1692(e).

**8.**   Upon finding abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, ***and*** to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. __, 130 S. Ct. 1605, 1623, 176 L. Ed. 2d 519 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(a).

**9.**   Congress also found that existing consumer protection laws were inadequate. 15 U.S.C. § 1692(b).

**10.**   "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

11. "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011).

12. The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

13. The FDCPA creates no special exceptions for attorneys – even when that conduct falls within conduct traditionally performed only by attorneys. *Heintz v. Jenkins*, 514 U.S. 291 (1995). For example, there is no "litigation privilege" for debt collecting attorneys. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007). "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005).

14. "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman,* 868 F.2d

566, 570 (3d Cir. 1989).

**15.** Attorneys regularly engaged in the collection of residential rents, including the filing of complaints for eviction for non-payment of rent, are debt collectors. *Hodges v. Sasil Corp.*, 189 N.J. 210 (2007); and *Crenshaw v. Computex Info. Services, Inc.*, Case No. 10-1493, 2011 WL 1640175 (D.N.J. Apr. 30, 2011)

**16.** To prohibit harassment and abuses by debt collectors the FDCPA, at 15 U.S.C. § 1692d, provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt and names a non-exhaustive list of certain *per se* violations of harassing and abusive collection conduct. 15 U.S.C. § 1692d(1)-(6).

**17.** To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt and, without limiting the generality of the prohibited conduct, enumerates sixteen acts and omissions which are deemed to be *per se* violations of that section. 15 U.S.C. § 1692e(1)-(16). That list includes:

> **17.01.** Making a false representation as to the debt collector's compensation, 15 U.S.C. § 1692e(2)(B);

> **17.02.** Threatening to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5);

> **17.03.** Using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); and

> **17.04.** Failing to disclose in the initial communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and in subsequent communications that the communication is from a debt collector, 15 U.S.C. § 1692e(11).

**18.** To eliminate abusive debt collection practices, the FDCPA, at

15 U.S.C. § 1692g(a) sets forth guidelines for written notice to a consumer including:

 **18.01.** "the amount of the debt," 15 U.S.C. § 1692g(a)(1);

 **18.02.** "the name of the creditor to whom the debt is owed," 15 U.S.C. § 1692g(a)(2);

 **18.03.** "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector," 15 U.S.C. § 1692g(a)(3);

 **18.04.** "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector," 15 U.S.C. § 1692g(a)(4); and

 **18.05.** "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor," 15 U.S.C. § 1692g(a)(5) (emphasis added).

 **19.** Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

 **20.** Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Federal Trade Commission, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle*

*Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff &
Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

21. A debt collector who violates any provision of the FDCPA is
liable for any actual damages. Aside from economic damages, "violations
of the FDCPA, *by their very nature*, (e.g., abusive, deceptive or unfair debt
collection practices), are those kinds of actions which may be expected to
cause emotional distress and, therefore, the availability of damages for
such distress is of paramount importance." *Crossley v. Lieberman*, 90 B.R.
682, 692 (E.D. Pa. 1988) *aff'd*, 868 F.2d 566 (3d Cir. 1989) (emphasis
added). A consumer can recover "damages for personal humiliation,
embarrassment, mental anguish, or emotional distress." *Statements of
General Policy or Interpretation Staff Commentary On the Fair Debt Collection
Practices Act*, 53 FR 50097-02, 50109; *Smith v. Law Offices of Mitchell N.
Kay*, 124 B.R. 182, 185 (D. Del. 1991). Such damages can include
recovery for "anxiety, nervousness, worry, and fear." *Armbruster v. Hecker*,
3:06cv1149, 2010 WL 1643599 (M.D. Pa. Apr. 22, 2010). "Congress did
not limit the recovery of actual damages for emotional distress under the
FDCPA or FCRA to those damages a plaintiff could have recovered under
state law in a separate tort action for intentional or negligent infliction of
emotional distress." *Smith, supra* at 188.

22. A debt collector who violates any provision of the FDCPA is
also liable for "additional damages" (also called "statutory damages") up
to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a), which
"***encourages*** parties who have suffered no loss to bring civil actions for
statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

23. BENNETT seeks actual and statutory damages, attorney fees,
and costs pursuant to the FDCPA.

v.   FACTS

24. Kadmiel Wekwete ("Landlord") is the owner of certain real
estate located in Essex County, New Jersey which is developed with a
single-family home.

25. Prior to December 2011, BENNETT and her husband, Sahib
Bennett, entered into a lease agreement with the Landlord under which
the Bennetts, including their child, would occupy the home as their
principal residence.

26. The lease term was three years beginning in or about May 2010 with BENNETT's option to renew for an additional two years.

27. The terms of the agreement also included the Bennetts' promise to pay rent and the Landlord's promise to perform specified repairs and upgrades to the home.

28. Shortly after the Bennetts began to occupy the home, they became frustrated by the Landlord's failure to undertake the repairs and upgrades as he had promised.

29. Notwithstanding the Bennetts' attempt to remedy the problems with the condition of the property despite the Landlord's promise to do so, many parts of the house continue to lack heat and are in an unsafe condition. For example, BENNETT's foot was impaled on a nail due to the disrepair of steps, and BENNETT burned her hand when attempting to change the soaked towel which was blocking a radiator leak from spewing superheated water.

30. Several times, after the Bennetts' repeated demands for the Landlord to perform, the Bennetts gave notice that they would and, in fact, did undertake self-help to perform repairs and deducted the cost or reasonable value from the rent.

31. This situation between the Bennetts and the Landlord has also resulted in regular and ongoing communication between the Bennetts and the Landlord.

32. Sometime prior to December 13, 2011, however, the Landlord engaged FRISCH to evict the Bennetts alleging nonpayment of rent.

33. The Landlord engaged FRISCH at a time when the Landlord claimed that BENNETT was in default of her obligation to pay rent.

34. FRISCH is regularly engaged in the collection of debts; in particular, the collection of residential rents including the commencement of eviction proceedings based on nonpayment of rent.

35. The principal purpose of FRISCH is the collection of debts and he uses the mails, telephone, the internet and other instruments of interstate commerce.

36. FRISCH has contended that BENNETT was in default of her obligation to pay rent.

37. Despite having repeatedly communicated with BENNETT, at no time did BENNETT receive a written communication from FRISCH stating either:

37.01.  the amount of past due rent allegedly owed;

37.02.  the name of the original creditor;

37.03.  a statement that unless BENNETT, within thirty days after receipt of the notice, disputed the validity of the claimed past due rent, or any portion thereof, the claim for the past due rent would be assumed by FRISCH to be valid;

37.04.  a statement that if BENNETT notified FRISCH in writing within the thirty-day period that the claimed past due rent, or any portion thereof, is disputed, FRISCH would obtain verification of the claimed past due rent and a copy of such verification would be mailed to BENNETT by FRISCH; or

37.05.  a statement that, upon BENNETT's written request within the thirty-day period, FRISCH would provide BENNETT with the name and address of the original creditor, if different from the current creditor.

38. In an attempt to collect the allegedly past due rent, FRISCH left BENNETT a voicemail message on December 13, 2011 a transcript of which is:

> Ms. Bennett, uh, this is Avram Frisch, the attorney for Kadmiel Wekwete, uh, calling in regard to the, uh, tenancy, ahh, at his house, on 12 Fairway Drive.
>
> Now, I have seen your emails and I understand that there have been issues in the past, so, contrary to anything that's happened in the past, there will be no longer be rent reductions taken in exchange for repairs. Mr. Wekwete will perform the repairs as needed in his judgment.
>
> If you don't like that then there are two choices. One is we can go to court and evict you. Uh it, nonpayment of rent

is grounds for eviction and we will go and we will take care of that. That's one option. The other option is, if you don't like this, you know, is to leave. He's willing to let you leave anytime you want. He's perfectly happy to take the house back.

So, your, mmm, three options here really are, one, pay the rent on time every month and you pay the rent on time, he'll make repairs as needed. Number two, you leave. Number three, we go to court – it's a waste everyone's time – I will remind you that your lease likely also calls for you to pay his attorney's fees. So, just bear that in mind.

I'm happy to discuss further. Umm, in the future, he's asked me to collect the rent on his behalf. So, please give me a call and we will discuss where to send the rent check and I will, int-, handle everything from here. I'm not looking to have a fight with you but, you know, this relationship you've had with him has to change. It's not a functional one.

So please give me a call, 201-289-5352. I'm gonna be leaving the office shortly but you can reach me tomorrow. Thank you.

**39.** The voicemail message failed to state that FRISCH was a debt collector.

**40.** In emails and telephone conversations between BENNETT and FRISCH subsequent to the December 13, 2011 voicemail message, FRISCH has yelled and screamed at BENNETT, has wrongfully alleged that the Bennetts have no right to the two year renewal, and repeatedly threatened to evict the Bennetts.

**41.** The Bennetts made repeated demands to the Landlord and FRISCH seeking confirmation that the Landlord had complied with N.J.S.A. 46:8-19 as to the deposit of the Bennetts' security deposit in a New Jersey financial institution and as to the notice of such to the Bennetts.

**42.** When neither FRISCH nor the Landlord provided information demonstrating compliance with N.J.S.A. 46:8-19, BENNETT gave notice exercising the remedy set forth in that law, namely, that the Landlord apply the deposit to rent and that no future security deposit be

demanded.

43. By letter dated August 10, 2012, FRISCH falsely represented that the Landlord had complied with the security deposit law.

44. On September 18, 2012, FRISCH, as attorney for the Landlord, filed a complaint ("Eviction Complaint") in the Superior Court of New Jersey, Law Division, Special Civil Part, and thereby commenced an action venued in Essex County to evict the Bennetts for nonpayment of rent entitled *Wekwete v. Bennett*, and designated in that court by Docket No. ESX-LT-28812-12.

45. By signing and filing the Eviction Complaint, FRISCH certified that "to the best of his … knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual allegations have evidentiary support." New Jersey Court Rule 1:4-8(a); *cf.*, Fed.R.Civ.P. 11(b).

46. The Eviction Complaint alleged, among other things, that the Landlord had registered the leasehold and notified tenant as required by N.J.S.A. 46:8-27 et seq.

47. In fact, such allegation was false because, at the time FRISCH filed the Eviction Complaint, the Landlord had not registered the leasehold and the Bennetts had not been notified as required by N.J.S.A. 46:8-27 et seq.

48. Pursuant to N.J.S.A. 46:8-33, the Landlord cannot lawfully obtain judgment for possession until he has complied with N.J.S.A. 46:8-27 et seq. but FRISCH nevertheless continues to pursue eviction of the Bennetts for nonpayment of rent.

49. The natural consequence of FRISCH's communications with BENNETT was to harass, oppress and abuse BENNETT for the purpose of either inducing payment as demanded by FRISCH or eviction by the Bennetts' voluntary abandonment of the home.

50. As a direct cause of FRISCH's behavior, BENNETT has suffered emotional distress, frustration, annoyance, and aggravation. BENNETT's emotional response to FRISCH's conduct has manifested itself in numerous ways; for example, following receipt of the January 11, 2012

voicemail, BENNETT became so upset that she could not perform her responsibilities at work and it became necessary for her to leave work for the rest of the day.

### VI.  CAUSE OF ACTION FOR VIOLATIONS OF THE FDCPA

**51.** BENNETT realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

**52.** BENNETT is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

**53.** FRISCH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**54.** The alleged past due rent is a "debt" within the meaning of 15 U.S.C. §1692a(5).

**55.** The December 13, 2011 voicemail message was a "communication" within the meaning of 15 U.S.C. § 1692a(2).

**56.** The December 13, 2011 voicemail message was a "communication with the consumer" with a within the meaning of 15 U.S.C. § 1692e(11).

**57.** FRISCH violated the FDCPA in one or more of the following ways:

**57.01.** In the December 13, 2011 voicemail message, FRISCH failed to disclose either that he was "attempting to collect a debt and that any information obtained will be used for that purpose" or that "the communication is from a debt collector" in violation of 15 U.S.C. § 1692e(11).

**57.02.** FRISCH never sent BENNETT a written notice containing the amount of the alleged past due rent in violation of 15 U.S.C. § 1692g(a)(1).

**57.03.** FRISCH never sent BENNETT a written notice containing the name of the creditor to whom the alleged past due rent was owed in violation of 15 U.S.C. § 1692g(a)(2).

**57.04.** FRISCH never sent BENNETT a written notice containing a

statement that unless BENNETT, within thirty days after receipt of the notice, disputed the validity of the claimed past due rent, or any portion thereof, the claim for the past due rent would be assumed by FRISCH to be valid, in violation of 15 U.S.C. § 1692g(a)(3).

57.05. FRISCH never sent BENNETT a written notice containing a statement that if BENNETT notified FRISCH in writing within the thirty-day period that the claimed past due rent, or any portion thereof, is disputed, FRISCH would obtain verification of the claimed past due rent and a copy of such verification would be mailed to BENNETT by FRISCH, in violation of 15 U.S.C. § 1692g(a)(4).

57.06. FRISCH never sent BENNETT a written notice containing a statement that, upon BENNETT's written request within the thirty-day period, FRISCH would provide BENNETT with the name and address of the original creditor, if different from the current creditor, in violation of 15 U.S.C. § 1692g(a)(5).

57.07. FRISCH's August 10, 2012 letter falsely represented that the Landlord had complied with N.J.S.A. 46:8-19, in violation of 15 U.S.C. § 1692e(10).

57.08. By FRISCH's filing of the Eviction Complaint, he falsely represented that the Landlord had complied with N.J.S.A. 46:8-27 et seq., in violation of 15 U.S.C. § 1692e(10).

57.09. By FRISCH's repeated threats to evict BENNETT and his filing the Eviction Complaint seeking a judgment for possession without the Landlord having complied with having complied with N.J.S.A. 46:8-27 et seq., FRISCH threatened to take an action that could not legally be taken in violation of 15 U.S.C. § 1692e(5).

57.10. The natural consequences of FRISCH's communications with BENNETT have been to harass, oppress and abuse BENNETT in connection with FRISCH's attempt to collect the alleged past due rent in violation of 15 U.S.C. § 1692d.

58. Based on any one of those violations, FRISCH is liable to

BENNETT for actual and statutory damages, attorney's fees and costs.

## VII.  PRAYER FOR RELIEF

59. WHEREFORE, Plaintiff, Micaela P. Bennett, respectfully requests that the Court enter judgment against Defendant, Avram E. Frish, as follows:

59.01.  An award of actual damages for BENNETT pursuant to 15 U.S.C. § 1692k(a)(1);

59.02.  An award of statutory damages for BENNETT pursuant to 15 U.S.C. § 1692k(a)(2)(A);

59.03.  Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

59.04.  For such other and further relief as may be just and proper.

## VIII. JURY DEMAND

60. Plaintiff, Micaela P. Bennett, demands a trial by jury on all issues so triable.

## IX.  CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

61. Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Philip D. Stern & Associates, LLC
Attorneys for Plaintiff, Micaela P. Bennett
*s/Philip D. Stern*

Dated: December 7, 2012          Philip D. Stern